UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREW GARGUILIO,

        Petitioner,

- against -

PHILIP HEATH, as Superintendent of Sing Sing Correctional Facility,

        Respondent.

**Memorandum, Order and Judgment**

No. 13-CV-701

**Appearances:**

For the Petitioner:

    Steven R. Kartagener, Esq.
    New York, New York


For the Respondent:

    Charles J. Hynes, Esq.
    District Attorney
    Kings County, New York

    By:    Camille O'Hara Gillespie, Esq.
             Assistant District Attorney

**Table of Contents**

I. Introduction ........................................................................................................................ 2
II. Facts and Procedural History............................................................................................ 3
   A. Crime of Conviction and Trial ................................................................................. 3
   B. Direct Appeal ........................................................................................................... 5
   C. State Section 440.10 Proceeding.............................................................................. 5
   D. Petition for a Writ of Habeas Corpus ...................................................................... 7
III. Law................................................................................................................................... 8
   A. Antiterrorism and Effective Death Penalty Act ....................................................... 8
   B. Ineffective Assistance of Counsel ............................................................................ 9
   1. Generally.................................................................................................................... 9
   2. Conflict of Interest ................................................................................................... 10
   3. Analyzed by State Court .......................................................................................... 12
IV. Application of Law to Facts ........................................................................................... 13
   A. Actual Conflict ....................................................................................................... 13
   B. No Adverse Effect .................................................................................................. 14
V. Certificate of Appealability ............................................................................................ 17
VI. Conclusion...................................................................................................................... 17

## I. Introduction

Petitioner, Andrew Garguilio, seeks a writ of habeas corpus. *See* 28 U.S.C. § 2254. Following a State jury trial, he was convicted of murder in the second degree. Tr. of Crim. Trial, Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus, May 14, 2013, Ex. A, ECF Nos. 9-10 ("Trial Tr."), at 1356. He is currently serving a prison term of 15 years to life.

This collateral attack is based on a contingency fee agreement petitioner entered into with one of his two trial attorneys, Ronald Aiello: if he was acquitted of all crimes, the attorney would get a bonus. It is argued that the agreement presented an actual conflict of interest, depriving

2

Garguilio of his Sixth Amendment right to effective counsel by incentivizing his attorneys not to pursue an extreme emotional disturbance defense. *See* Pet. for Writ of Habeas Corpus, Nov. 13, 2012, ECF No. 1 ("Petition").

Agreements for "bonuses" to defense counsel on acquittal are strongly discouraged. They lead to charges of conflicts of interest and collateral attacks on convictions such as the present one. They also violate public policy since they may induce counsel to cross the line of propriety in matters such as inducing perjury or tampering with evidence.

For the reasons stated below, the petition is denied. A certificate of appealability is granted.

## II. Facts and Procedural History

### A. Crime of Conviction and Trial

The facts are largely undisputed. In April 2004, petitioner killed his brother-in-law, Preston Geritano, following a physical altercation that began outside a restaurant in Brooklyn. Petitioner was represented at trial by attorneys Ronald Aiello and Albert Brackley. *See People v. Garguilio*, 36 Misc. 3d 1240(A) (Kings Cnty. Sup. Ct. July 9, 2012), at *1.

The victim had previously—and continuously—threatened to kill petitioner. *See* Trial Tr. 868, 921-922, 936-37, 1002-03. "[N]eutral witnesses [testified] that at one point in the fight [petitioner] dragged the fleeing Geritano from a car and repeatedly stabbed him." *Garguilio*, 36 Misc. 3d 1240(A), at *1. Geritano died from twenty two stab-and-incise wounds to the head and upper body. Trial Tr. 593-94. At trial, petitioner admitted to stabbing Geritano but denied doing so intentionally. *Id.* at 985-86.

Provided to the jury were instructions on second-degree murder, and the lesser crimes of first- and second-degree manslaughter, and self-defense. *Id.* at 1265-81. Explained by the trial

judge was that only the crime of second-degree murder involves a requirement that death result from conduct intended to kill. *See id.* at 1265; N.Y. Penal Law § 125.25(1). By contrast, no intent to kill need be found to secure a conviction on either manslaughter charge. First-degree manslaughter requires a defendant act "with *intent to cause serious physical injury*" that causes death. Trial Tr. 1267-68 (emphasis added); N.Y. Penal Law § 125.20(1). Second-degree manslaughter requires that "a person *recklessly* cause[] the death of another person." Trial Tr. 1269 (emphasis added); N.Y. Penal Law § 125.15(1).

As to Garguilio's self-defense argument, the trial judge instructed that, assuming the jury found that petitioner killed Geritano but was not the initial aggressor in the altercation, a not guilty verdict could be based upon a finding that the defendant "reasonably" believed deadly force was necessary to "prevent serious physical injury or death to himself" in response to the victim's actual or imminent use of deadly force. Trial Tr. 1273-74; N.Y. Penal Law § 35.15.

An extreme emotional disturbance defense, though discussed among themselves by defense trial counsel, was not pursued by petitioner's lawyers or charged to the jury. *Garguilio*, 36 Misc. 3d 1240(A), at *2. That defense, when successfully proven in New York, excuses a defendant's intent to kill *mens rea* if he acts under an extreme emotional disturbance for which there is a reasonable explanation. N.Y. Penal Law § 125.25(1)(a). It does not provide for full acquittal of a homicidal act, but serves only to convert the crime of murder in the second degree—*i.e.*, conduct aimed at intentionally killing someone—into manslaughter in the first degree—*i.e.*, reckless conduct that results in the death of another person. N.Y. Penal Law § 125.20(2) ("The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree . . . .").

The jury returned a guilty verdict on the second degree murder charge. Trial Tr. at 1356. Garguilio moved to set aside the verdict. N.Y. C.P.L. § 330.30(1). He claimed that the prosecution failed to disclose potentially exculpatory grand jury testimony. The motion was denied. *People v. Garguillo* [sic], 13 Misc. 3d 1202(A) (Kings Cnty. Sup. Ct. July 12, 2006). Petitioner was sentenced to a prison term of twenty years to life. Tr. of Sentencing Hr'g, Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus, Ex. A, ECF No. 10-3, at 16.

### B. Direct Appeal

An appeal was taken to the Appellate Division in January 2008. While none of petitioner's substantive bases for appeal were accepted, the judgment was ordered "modified, as matter of discretion in the interest of justice, by reducing the sentence to an indeterminate term of 15 years to life." *People v. Garguilio*, 870 N.Y.S.2d 380 (2d Dep't 2008).

Garguilio moved for reargument. The motion was denied. *People v. Garguilio*, Ind. No. 2569/04, No. 2006-07312 (2d Dep't May 26, 2009), Resp. Aff in Opp. to Pet. for a Writ of Habeas Corpus, Ex. D, ECF No. 11. The Court of Appeals of New York denied Garguilio's application for leave to appeal. *People v. Garguilio*, 12 N.Y.3d 915 (Table) (2009).

### C. State Section 440.10 Proceeding

In 2010, petitioner moved to vacate the judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law. *Garguilio*, 36 Misc. 3d 1240(A). He claimed ineffective assistance of counsel in violation of the New York and federal constitutions. Pet. Mot. to Vacate Judgment, Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus, Ex. F, ECF No. 11-2, at 2108. His argument was based on a contingency fee agreement alleged to have been entered into by himself with one of his two trial attorneys—Roger Aiello; Aiello would earn a $75,000 bonus in the event of acquittal. *Id*. at 2108-09  Garguilio claimed that this agreement

5

caused Aiello to forgo assertion of an extreme emotional disturbance defense in order to obtain a larger fee for a straight acquittal. *Id.*

The State court held evidentiary hearings for three days. Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus 6, May 14, 2013, ECF No. 9, ("Resp. Aff."), at ¶ 28. Testimony was presented from several witnesses, including the petitioner, an attorney he had retained for unrelated civil litigation, and another attorney who had been friends with Aiello and previously represented petitioner on an unrelated perjury charge. *Garguilio*, 36 Misc. 3d 1240(A) at *3-4. The two testifying attorneys corroborated petitioner's contention that he had entered into a contingency fee arrangement with Aiello. *Id.* Aiello did not testify since he had died. Resp. Aff. ¶ 23.

In July 2012, petitioner's motion to vacate the judgment was denied in a thorough and well-reasoned memorandum and order. While the State court found that petitioner "met his burden of proving that a contingen[cy] fee existed, and thus that a conflict of interest existed," *Garguilio*, 36 Misc. 3d 1240(A), at *3, prejudice caused by the conflict was not sufficiently demonstrated to establish a violation under either the federal or the New York State constitution. *Id.* at *6; *see also id.* at *4 n.3.

The State court reasoned that an attorney promised a bonus on the basis of a full acquittal could not, as a matter of logic, have been motivated to avoid the extreme emotional disturbance defense. *Id.* at *5. The court noted that "the extreme emotional disturbance defense can be accepted, and help the defendant, only if the jury has already found all the elements of Murder in the Second Degree and is faced with the obligation to *convict.*" *Id.* (emphasis in original). Since an extreme emotional disturbance defense is only relevant after the jury has rejected complete acquittal of all crimes, "an attorney with a financial interest in an acquittal has

no rational basis to forgo the defense." *Id.* The court concluded that the "reason for [Aiello's] opposition [to the extreme emotional disturbance defense] is logically unrelated to the contingen[cy] fee agreement." *Id.* at *6.

"[P]lausible legitimate explanations" existed for counsel's abstaining from relying on an extreme emotional disturbance defense. *Id.* at *5. Though acknowledging that such a defense would have been viable, the State court ruled that advocating for an extreme emotional disturbance defense was fraught with the potential to confuse the jury with adverse effects for defendant. Already under consideration by the jury were charges of second-degree murder, which requires a showing of intent to kill, self-defense, which posits that Garguilio was justified in his actions, as well as manslaughter charges premised on a lack of intent to kill. The trial court reasoned that, "[t]o add another alternative defense—one that assumed that defendant was unjustified, and did intend to kill, but claimed that there were mitigating circumstances—would be to test the jurors' sophistication in ways that many reasonable defense attorneys would find unwise." *Id.*

Petitioner subsequently applied for permission to appeal the Supreme Court's order. His application was denied. *People v. Garguilio*, Ind. No. 2569/04, (2d Dep't Nov. 7, 2012), Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus, Ex. F, ECF No. 11.

### D. Petition for a Writ of Habeas Corpus

After exhausting his state court remedies, Garguilio timely filed a petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254; Petition (filed Nov. 13, 2012). He asserts that the State court ruled incorrectly in finding that he suffered no prejudice from the contingency fee arrangement. Pet. Reply Br., June 3, 2013, ECF No. 13 ("Pet. Reply"), at ¶ 5.

7

It is conceded by the parties that no further evidentiary hearing is required. *Cf. LoCascio v. United States*, 395 F.3d 51 (2d Cir. 2005). The voluminous record developed in the State court is sufficient. Resp. Ltr., June 11, 2013, ECF No. 16; Pet. Ltr., June 12, 2013, ECF No. 17.

## III. Law

### A. Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus to a state prisoner on a claim "adjudicated on the merits" in state court only if it concludes that "the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)). Under the "contrary to" clause, "a federal . . . court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). A decision by a state court is considered "contrary" to clearly established federal law "if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent." *Henry v. Poole*, 409 F.3d 48, 68 (2d Cir. 2005) (citing and quoting *Williams,* 529 U.S. at 405). Under the "unreasonable application" clause, "a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002).

A decision based on a "determination of facts" made by a state court "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Proper deference under AEDPA requires that a state court decision be followed, "unless *objectively* unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (emphasis added). Section 2254(e)(1) requires that "a determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U .S.C. § 2254(e)(1).

B. **Ineffective Assistance of Counsel**

　　1. **Generally**

A criminal defendant has a right under the Sixth Amendment "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This is "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970) (emphasis added). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Ineffective

assistance of counsel may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003).

To prevail on an ineffective assistance claim, a petitioner must show: (1) counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *Strickland*, 466 U.S. at 688, and (2) "prejudice" was suffered. *Id.* at 693. Demonstrating prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 2. Conflict of Interest

The right to counsel encompasses the "'correlative right to representation . . . free from conflict of interest.'" *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)). A violation of the Sixth Amendment may result from an attorney's "*potential* conflict of interest that resulted in prejudice to the defendant," or "an *actual* conflict of interest that adversely affected the attorney's performance." *United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994) (emphasis added).

"An *actual conflict* of interest arises during representation when 'the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action.'" *United States v. Moree*, 220 F.3d 65, 69 (2d Cir. 2000) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)) (emphasis added). Where, as in this case, an *actual* conflict of interest is claimed, "a less exacting standard applies" to a petitioner's burden. *Id.* Prejudice is *presumed* upon a "showing [of] (1) 'an actual conflict of interest' that (2) '*adversely affected* [a] lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)) (emphasis added). *See also United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) ("[A] defendant claiming he was denied his right to conflict-free counsel based on an actual conflict need not

10

establish a reasonable probability that, but for the conflict or a deficiency in counsel's performance caused by the conflict, the outcome of the trial would have been different."). The presumption is rebutted "by demonstrating that representation was not actually affected by the possibility of conflict." *Cuyler*, 446 U.S. at 354 (Brennan, J., concurring in part). *Accord Peterson v. New York*, No. 06-CV-3369, 2009 WL 935669, at *16 (S.D.N.Y. Apr. 7, 2009).

"To demonstrate adverse effect, a [petitioner] must establish that an actual lapse in representation resulted from the conflict." *Winkler*, 7 F.3d at 309 (internal citation and quotation marks omitted). A two-step inquiry is required. First, it must be determined whether "some plausible alternative defense strategy [was] not taken up by counsel." *LoCascio*, 395 F.3d at 56 (internal citations and quotation marks omitted). On this first step, the petitioner need only show that the alternative was "viable," but not that it "would necessarily have been successful." *Id.* (internal quotation marks omitted). At the second step, once a "viable" alternative is shown not to have been taken, the petitioner must show "causation—that the alternative defense was inherently in conflict with or not undertaken *due to* the attorney's other loyalties or interests." *Moree*, 220 F.3d at 69. (citation and internal quotation marks omitted; emphasis in original). An actual conflict "cannot be said to have caused [an attorney] to forgo the alternative defense" if there were reasons not to assert it "independent of [the actual conflict]." *LoCascio*, 395 F.3d at 58.

The Court of Appeals for the Second Circuit in *Winkler* denied habeas relief where the petitioner's trial attorney was promised a $25,000 acquittal bonus and failed to seek a plea agreement on behalf of his client. *Winkler*, 7 F.3d at 307-08. While it was acknowledged that "trial counsel had a disincentive to seek a plea agreement, or to put forth mitigating defenses that would result in conviction of a lesser included offense," *id.*, no adverse effect on the defendant

11

was demonstrated. Trial counsel's course of conduct could be explained by reasons other than the actual conflict of interest—namely, that the petitioner continuously asserted his complete innocence. *Id.* at 309-10. *See also Levy*, 25 F.3d at 158 ("This case is unlike *Winkler*, where there were justifiable reasons other than the attorney's conflicts that better explained why alternative defense strategies were not pursued."). *Cf. Schwarz*, 283 F.3d at 95 ("This conflict would seem to be the only possible explanation for why [trial counsel] did not pursue the strategy of implicating [a third party].").

### 3. Analyzed by State Court

Whether an actual conflict exists and whether it adversely affected legal representation are mixed questions of law and fact. *See Cuyler*, 446 U.S. at 342 ("[T]he holding that the lawyers . . . did not engage in multiple representation is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case."); *Strickland*, 466 U.S. at 698 ("[T]he question whether multiple representation in a particular case gave rise to a conflict of interest . . . is a mixed question of law and fact." (citing *Cuyler*, 446 U.S., at 342)). *Accord United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005) ("The determinations whether a conflict existed and whether the conflict had an adverse effect are mixed questions of law and fact.").

"Under AEDPA, mixed questions of law and fact are subject to the standard set forth in 28 U.S.C. § 2254(d)(1) which requires the habeas court to determine whether the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Shiwlochan v. Portuondo*, 345 F. Supp. 2d 242, 259 (E.D.N.Y. 2004) (citing *Overton,* 295 F.3d at 277), *aff'd*, 150 F. App'x 58 (2d Cir. 2005). Findings of fact made by a state court in support of legal analysis are considered

separately and owed heightened deference under sections 2254(d)(2) and 2254(e)(1). *See Rice v. Collins*, 546 U.S. 333, 342 (2006) ("The question whether a state court errs in determining the facts is a different question from whether it errs in applying the law."); *see also Nightengale v. Conway*, No. 05-CV-1994, 2009 WL 995178, at *10 (S.D.N.Y. Apr. 13, 2009) ("'[P]ure determinations of fact—for example, whether a person in a lineup was sitting or standing—are entitled to the statutory presumption of correctness under 28 U.S.C. § 2254(e)(1).'" (quoting *Givens v. Burge*, No. 02-CV-0842, 2003 WL 1563775, at *7 (S.D.N.Y. Mar. 4, 2003)).

Determining whether a state court application of *Strickland* was unreasonable under AEDPA is not a question of "whether counsel's actions were reasonable"; rather, it is a question of "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

## IV. Application of Law to Facts

### A. Actual Conflict

Proved by ample evidence, the State court found that petitioner showed "by a preponderance of the evidence that the contingen[cy] fee agreement was made." *Garguilio*, 36 Misc. 3d 1240(A) at *3-4; Part II.C, *supra*. This finding was not an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). The presumption of correctness that attaches to individual findings of fact is not challenged by either party. *See* 28 U.S.C. § 2254(e)(1).

A contingency fee arrangement of the kind found to have existed presents a classic case of an *actual* conflict of interest. *See Winkler*, 7 F.3d at 307-308 ("Plainly the contingency fee agreement created an actual conflict of interest."). *See also* New York Rules of Professional Conduct Rule 1.5(d) ("A lawyer shall not enter into an arrangement for, charge or collect: (1) a

13

contingent fee for representing a defendant in a criminal matter"). The State court's determination that the contingency fee gave rise to a conflict of interest is not "unreasonable." 28 U.S.C. § 2254(d)(1). Neither party contests this conclusion. *See generally* Resp. Mem. of Law., Resp. Aff. in Opp. to Pet. for a Writ of Habeas Corpus, ECF No. 9; Pet. Reply.

## B. No Adverse Effect

At issue is whether Aiello's performance was "adversely affected" by the actual conflict. In challenging the conclusion that no adverse effect followed the actual conflict, petitioner relies heavily on the findings of the State court that Aiello "engaged in . . . 'odd behavior' and [advanced] 'spurious arguments.'" Pet. Reply ¶ 5. *See also* Tr. of Hr'g, June 17, 2013 ("June 17 Tr.").

Accepted is the State court's finding that Aiello was "hostile to the suggestion that a 'mental' defense might sensibly be interposed, and to the submission of any offenses other than Murder in the Second Degree." *Garguilio*, 36 Misc. 3d 1240(A), at *4. It is undisputed, for example, that Brackley advocated for using a mock jury proceeding to test various potential theories of the case, including an extreme emotional disturbance defense, but was persuaded not to do so on account of Aiello's questionable advice that mock jurors could be subpoenaed to testify at trial. *Id.* at *2, 4. *See* Paul W. Grimm *et al.*, Discovery Problems and Their Solutions 145-146 (Am Bar Ass'n ed., 2005) (arguing that "[d]iscovery of the substance of communications of mock jurors . . . and their identities should . . . be protected" from exposure at trial as on work-product and relevancy grounds).

Even assuming that the extreme emotional disturbance defense was viable, *LoCascio*, 395 F.3d at 56, no constitutional error was committed by the State court in finding that the contingency fee was not the cause of Aiello's decision to oppose the extreme emotional

14

disturbance defense. As the State court reasoned, such a defense "could only have reduced the level of what would otherwise be a conviction anyway, and thus did not provide a logical reason for Aiello to oppose the defense," because any conviction would void the agreement. *Garguilio*, 36 Misc. 3d 1240(A), at *6. Nor can it be argued that Aiello pursued primarily an all-or-nothing strategy: the first- and second-degree manslaughter charges would not have resulted in a bonus and yet were advocated by counsel—or, at least, unopposed by Aiello. Submission of these lesser included offenses to the jury supports the conclusion that Aiello's decision to forgo the extreme emotional disturbance defense was a strategic one, rather than one motivated by the opportunity for financial gain.

The State court reasonably concluded that there were "plausible legitimate explanations for [Aiello's] decision not to" interpose an extreme emotional disturbance defense. *Garguilio*, 36 Misc. 3d 1240(A), at *5. One such explanation was a strategic concern for overwhelming the jury with alternative defenses. Aiello and his co-counsel were already arguing for a conviction on the lesser charges of first- and second-degree manslaughter, both premised on a lack of intent to kill, as well as self-defense.

Yet, there is merit to petitioner's argument. If the extreme emotional disturbance defense had been accepted by the jury, Garguilio would have been "convicted," even though of a lesser crime, and the bonus would not have been due. But, if the theory actually relied upon by counsel—self-defense—had won the day, Garguilio would have been wholly acquitted and the bonus would have been due. In theory, counsel chose to emphasize the all-or-nothing self-defense rather than extreme emotional disturbance because success in the former would have gained Aiello a bonus, but winning on the later would not. And there was some color to the emotional disturbance argument. Since the deceased, Geritano, had been goading Garguilio with

15

threats of harm, arguably Garguilio stabbed his tormentor repeatedly and uncontrollably because he suddenly cracked after a final threat.

Despite the strength of the petition, "a fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight." *LoCascio v. United States*, 462 F. Supp. 2d 333, 341 (E.D.N.Y. 2005) (quoting *Strickland*, 466 U.S. at 689) *aff'd*, 473 F.3d 493 (2d Cir. 2007). *Cf. Schwarz*, 283 F.3d at 95 ("Under these circumstances, we are convinced that no effective conflict-free defense attorney would have acted as [the attorney] did, and, thus, only [the attorney's] conflict could explain his actions.").

Petitioner has not shown that the State court was wrong in rejecting his claim that Aiello's opposition to the extreme emotional disturbance defense was "due to" the contingency fee. *See Moree*, 220 F.3d at 69. The State court's conclusion is not the product of an "unreasonable application of," and not "contrary to[,] . . . clearly established Federal law." 28 U.S.C. § 2254(d). *Cf. Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005) ("The state standard referred to by the Appellate Division appears to be similar to the federal standard for evaluating a defendant's claim of ineffective assistance of counsel due to a conflict of interest . . . . Thus, the Appellate Division's decision was not clearly 'contrary' to Supreme Court law." (internal citation omitted)).

The State court conducted an extensive evidentiary hearing and considered all of the contested issues. Its decision cannot be disturbed under AEDPA. *Cf. Lopez v. Miller*, 915 F. Supp. 2d 373, 421 (E.D.N.Y. 2013) (determining that a state court decision was unreasonable because it failed to hold an evidentiary hearing on credibility issues and thus was based on a "'materially incomplete' analysis").

## V. Certificate of Appealability

A certificate of appealability may be granted upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253. It is warranted upon a finding "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Middleton v. Attorneys Gen. of States of N.Y., Pa.*, 396 F.3d 207, 209 (2d Cir. 2005) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The result reached here, dismissal, is not a foregone conclusion. Moreover, a strong appellate court statement against "bonuses" to successful counsel is in order. Reevaluation of the petition is desirable. A certificate of appealability is granted.

## VI. Conclusion

The petition is dismissed, but a certificate of appealability is granted. No costs or disbursements are awarded.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated:   August 1, 2013
         Brooklyn, New York